[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13444

_____

D.C. Docket No. 1:10-cr-00097-JEC-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN-DANIEL PERKINS,
a.k.a. LJ,
a.k.a Daniel Mathews,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 1, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and HAIKALA,[*]
District Judge.

_____

[*] Honorable Madeline Hughes Haikala, United States District Judge for the Northern District of
Alabama, sitting by designation.

HAIKALA, District Judge:

Jean-Daniel Perkins appeals his conviction and the 360-month sentence that the district court imposed after a jury, in Mr. Perkins's absence, found him guilty on all counts of a 37-count indictment concerning a credit card fraud scheme. Following his arrest, Mr. Perkins embarked upon a new scheme – one designed to ensnarl the proceedings against him so that he might avoid trial altogether.  Mr. Perkins rejected two court-appointed attorneys, attempted to hijack every hearing that he attended, and refused to participate in his own trial, threatening physical violence if the district judge tried to compel him to enter the courtroom.  On appeal, through appointed counsel, Mr. Perkins raises multiple challenges to the conviction and to his sentence.  We affirm.

## I.  BACKGROUND

In June 2010, a grand jury indicted Mr. Perkins on two counts of conspiracy to commit bank fraud, 28 counts of bank fraud, four counts relating to counterfeit access devices, and one count of aggravated identity theft.  The indictments pertain to a complex credit card fraud scheme that Mr. Perkins operated for approximately 14 months.  Mr. Perkins completed thousands of fraudulent transactions that netted more than $4 million in ill-gotten gains.

Shortly after his arrest on these charges, Mr. Perkins appeared before a magistrate judge.  The magistrate judge advised Mr. Perkins of his constitutional

rights, including his right to counsel.  The magistrate judge stated:  "You may hire your own attorney or, in the event you are not able to afford an attorney, the court may appoint someone to represent you at no cost to you."  The magistrate judge and Mr. Perkins then had the following exchange:

> [The Court]:  It is my understanding that you would like the Court to appoint someone to represent you and that you are not able to afford an attorney; is that correct?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  To that extent you have completed a financial affidavit. Do you either swear or affirm that the information provided in the affidavit is true to the best of your knowledge?
>
> The Defendant:  Yes, ma'am.

The magistrate judge found that Mr. Perkins could not afford an attorney, so she appointed a lawyer to represent Mr. Perkins.

Shortly after his appointment, Mr. Perkins's attorney filed a motion to suppress evidence that authorities uncovered during two separate searches.  Mr. Perkins's attorney also filed a motion to suppress an out-of-court identification.  A few months later, Mr. Perkins's attorney filed a supplement to the motion to suppress.

While those evidentiary motions were pending, Mr. Perkins's attorney filed a motion to withdraw.  A magistrate judge heard the motion.  Mr. Perkins and his attorney attended the hearing.  The magistrate judge asked Mr. Perkins to explain

what was going on.  Mr. Perkins responded: "I haven't really consented to anything.  I haven't gave any permission to do anything . . . ."  After hearing a description of the work that Mr. Perkins's attorney had done and the challenges that Mr. Perkins's attorney faced in representing Mr. Perkins, the magistrate judge asked Mr. Perkins if he had anything to add.  Mr. Perkins replied:  "I just wanted to get on the record that I never consented to anything, period, anything at all."  After Mr. Perkins spoke about a few particular concerns, the magistrate judge remarked, "I am not sure what you are informing the Court or how you are expressing your desire to proceed in the case."  Mr. Perkins replied, "I'm not saying anything at all as far as I'm just making a statement . . . [L]ike I said, I'm not consenting to anything.  I'm not saying anything."  The magistrate judge found that the attorney-client relationship had been severed, and she appointed a new attorney to represent Mr. Perkins.

Mr. Perkins's second attorney represented him at an evidentiary hearing on the pending motions to suppress.  After the hearing, the new attorney filed a post-hearing brief in support of the motions.

A little more than four months after the magistrate judge appointed Mr. Perkins's second attorney, Mr. Perkins filed a "Revocat[i]on of Power of Attorney."  In that document, Mr. Perkins stated that he "revoke[d], cancel[ed], and annul[led]" his second attorney's representation.  Mr. Perkins's second

attorney then filed a motion to withdraw.  A magistrate judge held a hearing on the

motion and had the following exchange with Mr. Perkins:

> The Court:  Do you want Mr. Spencer to withdraw as your attorney?

> [Mr. Perkins]: For and on the order the record I have never requested
> any administrative (unintelligible) whatsoever from this court.  I have
> never requested any representation. . . . I have never accepted the
> benefits as they are under the Criminal Justice Act of 1964.  I am not
> an indigent, a ward . . . .

The magistrate judge advised Mr. Perkins that he had "the constitutional

right to effective assistance of counsel" and explained to Mr. Perkins that if he

wished "to proceed without an attorney," he would "have to waive or give up [his]

right to effective assistance of counsel."  The magistrate judge asked:  "Do you

want to waive or give up your right to effective assistance of –."  Mr. Perkins

interrupted and interjected:  "I do not accept your offer."  Again, the magistrate

judge asked Mr. Perkins:  "[D]o you want to waive or give up your right to

effective assistance of counsel?"  Mr. Perkins stated:  "I do not accept any of your

rights. . . . How can I waive something that I have never accepted and that does not

apply to me?"  The magistrate judge concluded: "I have asked the defendant

whether he will waive his right to effective assistance of counsel.  He has not given

me a responsive answer and so my decision is that Mr. Spencer will continue."

Mr. Perkins stated:  "I do not accept your order."

Shortly afterwards, the district judge denied Mr. Perkins's motions to suppress and set Mr. Perkins's case for trial on June 20, 2011.  Within one week of the trial setting, Mr. Perkins's attorney renewed his motion to withdraw.  He stated:  "Mr. Perkins ha[s] made it clear that he does not want the undersigned as counsel," and "Mr. Perkins *never* wanted counsel appointed to him under the Criminal Justice Act."  The lawyer attached to his motion an affidavit in which Mr. Perkins directed the attorney to "cease and desist all action for and on behalf of Jean-Daniel Perkins."

The district court took up the renewed motion to withdraw at Mr. Perkins's pretrial conference.  After reviewing a collection of *pro se* filings that Mr. Perkins submitted, the court asked:  "Mr. Perkins, are you trying to indicate that you want to waive your right to counsel?"  Mr. Perkins would not respond to the district judge's questions.  Instead, he repeatedly asked for the judge's name.  He questioned whether the judge had "proof of claim" of his "obligation to have representation," he asked whether the district court had a "contract" with him, and he ordered the district judge to dismiss the charges in the indictment.  With respect to his right to appointed counsel, Mr. Perkins stated:

> For and on the record, are you aware of the fact that I've never accepted representation? Can you provide evidentiary proof that I have accepted representation?  Is there anything on the record that will show that I accepted representation? Is there any contract? Is there any CJA 23 or anything of record that will show that I've ever accepted representation?

6

The district judge asked Mr. Perkins how he intended to defend himself at trial.  Mr. Perkins replied:  "What if I don't defend?  What if I'm not a defendant?  Where is your defendant?  How can you have a defendant if I'm not here to defend anything?"

The district court asked Mr. Perkins's attorney for his thoughts on the motion to withdraw.  Counsel stated:

> Mr. Perkins' position as I understand it, Judge, is that when he was arrested and brought to this Court, he never asked to be appointed counsel.  That he never said on any record, paper, document that he needed counsel, and that therefore any appointment of counsel is invalid. . . . I will say that he's never made threats or anything like that, but he has indicated that my representation is in fact tortious.

The district judge explained to Mr. Perkins that he had two choices: he could represent himself or his court-appointed attorney could represent him.  Because Mr. Perkins did not clearly express a desire to represent himself and adhere to the rules of the district court, the court denied the motion to withdraw.  The district judge observed:

> Were I looking at this for the first time the statements made by the defendant today and his repetitive documents, I would think we were dealing with someone who is delusional who needed to be sent to Butner for a mental examination . . . But I know that's not what we're dealing with . . . This is definitely studied, definitely contrived, definitely manipulative. So I don't see any reason to send this defendant off for a competency examination.

The district court added that a criminal defendant who wishes to represent himself must be willing to comply with court procedure and court orders, and Mr. Perkins, in word and deed, demonstrated that he intended to obstruct court proceedings rather than comply with court rules.  As if to confirm the district court's observation, when the district judge began to talk about the date on which trial would begin, Mr. Perkins interjected:  "You're not going to tell me anything.  You don't control me."

On the first day of trial, Mr. Perkins picked up where he left off at the pretrial conference.  He refused to come out of his holding cell.  Mr. Perkins threatened that if the marshals tried to force him to go to the courtroom, he would go "kicking and screaming."  The district judge discussed at length with a courtroom deputy, Mr. Perkins's lawyer, and counsel for the government whether to have the marshals bring Mr. Perkins to the courtroom.  The court considered alternative audio and video arrangements that would enable Mr. Perkins to observe the trial if he was not willing to attend.  After many failed attempts to persuade Mr. Perkins to enter the courtroom so that the court could begin jury selection, the district judge met with Mr. Perkins in an interview room in the holding area.  Counsel for the parties and a court reporter accompanied the district judge to the interview room.  When the court tried to advise Mr. Perkins of his rights

concerning trial, Mr. Perkins talked over the judge and shouted "I do not

understand[,] I do not agree[,]" and "I am here against my will."

Unable to obtain Mr. Perkins's consent to attend trial, the district court

provided contemporaneous audio/video coverage of the trial proceedings.  Before

commencing jury selection, the district court, via video feed, advised Mr. Perkins:

> We would be glad at any time to bring you back in [to the courtroom].
> If you just let a marshal know that you want to come back, we will be
> glad to have you in the trial.

Mr. Perkins never entered the courtroom, but his lawyer attended trial.  The district

court gave Mr. Perkins opportunities to talk with his lawyer throughout the trial.

On the second day of trial, outside of the presence of the jury, the district

judge remarked to counsel that although Mr. Perkins's actions made him seem like

he was mentally unstable, the court believed Mr. Perkins's behavior was purely

manipulative.  The district judge remarked that she saw no need for a competency

hearing because Mr. Perkins was employing a calculated strategy to disrupt

proceedings.  She stated:

> I have no concerns about this defendant's competency.  I view this as
> manipulative.  I believe the evidence, when it comes in, is going to
> show that he was quite clever at figuring out how to obtain millions of
> dollars from different people.  So I have absolutely no concern about
> his competency in any way and I think the record in many ways will
> show that this has been nothing but manipulative behavior on his part.

Before and during the trial, Mr. Perkins spoke with his family members

about the proceedings.  Pursuant to jail policy, prison officials recorded those

conversations.  The taped conversations reveal Mr. Perkins's defense strategy.  Mr.

Perkins discussed with his family the mechanics of Rule 43 of the Federal Rules of

Criminal Procedure and researched what it means to be "present" at trial.  Mr.

Perkins told his mother that he planned to act crazy to obstruct the trial

proceedings.  He stated:

> I got to go straight plump nuts before they even pick the jury.  That's
> what I gotta do.  I gotta go haywire on that bitch. . . . So I gotta be
> plumb . . . plumb nuts before the shit even pop up  . . . Don't never act
> sensible. . . . That's how you got to do it.  Who said I want to go trial.
> I don't want to go to no mother fucking trial.  I don't want no jury
> trial.  Who on the jury? . . . And just go crazy on that mother fucker. .
> . . You bitches want to play games.  This shit going to get real zoo-
> like.  (Mr. Perkins laughing).

Mr. Perkins later bragged about his behavior, explaining how he had

outsmarted the court and found the way to avoid punishment:

> I went cold turkey on them bitches this morning. . . . I didn't even go
> out there. . . . They were saying . . . the judge kept sending people up
> there trying to beg for . . . trying to beg me to come down there and
> talk . . . on the record. . . . I was like, no, fucker. . . . So, I kept on
> saying . . . and it was recorded and I kept saying it loud, talking over.
> I kept saying I do not understand.  I don't agree.  I do not understand.
> I do not understand. . . .
>
> I'm going to give you the game right now.  I figured it out . . .
>
> [T]he book says that trial doesn't start until you . . . until . . . until you
> are in the court . . . until you . . . until you are present. . . . And once
> you are present, right, you have to be present when the first juror is
> sworn in and go to . . . I never . . . you have to be in the court and
> cross the bar.  I never . . . I'm not . . . that's my new thing.  I ain't

going to court.  When I get out of this mother fucker, I ain't going to court no more. . . . I'm not even crossing the bar.

[T]his shit could fuck the whole system up, man.

Following his conviction, Mr. Perkins filed a motion for a new trial.  In the motion, he argued that the district court violated Rule 43 because he was not present at his trial.  The district court issued a 56-page order describing Mr. Perkins's actions before and during trial and explaining in detail how the court applied Rule 43 under the circumstances of the case.  Ultimately, the district court denied the motion, concluding that Mr. Perkins had not identified a Rule 43 violation and, alternatively, that Mr. Perkins invited any conceivable Rule 43 violation.

Prior to sentencing, Mr. Perkins filed a *pro se* motion for recusal of the district judge.  Mr. Perkins stated that the district judge tricked him into going into the cell where the district court began trial.  Mr. Perkins also claimed that the district court said to him off the record that he should not resist because "we're going to get you anyway" and "[it's] the ones like you that I hate the most."  The district court denied Mr. Perkins's motion for recusal.

Mr. Perkins refused to attend his sentencing hearing or to speak with his attorney about sentencing.  The district court set up a live video and audio feed, so that Mr. Perkins could watch the sentencing proceeding.  The district judge visited

Mr. Perkins in a cell at the beginning of the sentencing hearing to try to give him an opportunity to object to the presentence report, but Mr. Perkins refused to get off of the toilet in his cell when the judge, the court reporter, and the attorneys for the parties arrived.  The district judge spoke to Mr. Perkins through the live feed and offered to let him come into the courtroom at any time to voice objections to the presentence report.  Following the hearing, the district court gave Mr. Perkins three weeks to read and object to the presentence report and the 360-month sentence that she announced at the hearing.  That sentence consisted of a 336-month term for the extensive fraud that Mr. Perkins undertook and a consecutive mandatory 24-month sentence for aggravated identity theft.

After the sentencing proceeding, Mr. Perkins's attorney filed a motion for a competency hearing.  In the motion, the attorney asserted that a childhood acquaintance stated that Mr. Perkins was taking antipsychotic drugs.  The motion also indicated that another inmate in jail with Mr. Perkins claimed that Mr. Perkins "seemed crazy."  The district court denied the motion, reasoning that Mr. Perkins's actions reflected lucidity and that the new information was not sufficient to warrant a competency hearing.

Appointed counsel filed this appeal on Mr. Perkins's behalf.

## II. DISCUSSION

*A. The Court will not Review Error that Mr. Perkins Invited.*

In the district court, Mr. Perkins attempted to cash in on his constitutional right to counsel and on the court's procedural rules, using both as a means to avoid prosecution. On appeal, he seeks to profit from his scheme. He argues that the district court erred because the court forced appointed counsel on him and because the court held a trial in his absence in violation of Rule 43 of the Federal Rules of Criminal Procedure. We will not consider these arguments because Mr. Perkins invited any error that the district court may have committed.

The rights that the Constitution provides to a criminal defendant are meant as a shield, not a sword, and the Federal Rules of Criminal Procedure provide a framework for the fair and efficient administration of all criminal cases. As Rule 2 states, the Federal Rules of Criminal Procedure "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2.

When, as in this case, a criminal defendant tries to manipulate the rules so that he may avoid criminal prosecution, he subverts court procedure and operates outside of the boundaries that the rules and the court decisions interpreting those rules establish. The record in this case leaves no doubt that Mr. Perkins planned to

sabotage the criminal proceedings against him.  In Mr. Perkins's words:  "I'm going to give you the game right now.  I figured it out . . . [T]he book says that trial doesn't start . . . until you are in the court . . . .  I ain't going to court . . . I'm not even crossing the bar . . . [T]his shit could fuck the whole system up, man."

The "book" – i.e. the law – also says this:  "Where a party invites error, the Court is precluded from reviewing that error on appeal." *United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006).  "The doctrine stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).  This waiver concept carries particular weight when, as here, a defendant engages in a calculated effort to damage "the whole system."  There can be no fairness in the administration of criminal procedure if a defendant can turn that procedure on its head.

Mr. Perkins tried to do just that.  Following his initial appearance in which Mr. Perkins asked the magistrate judge to appoint counsel to represent him, Mr. Perkins exploited every subsequent court appearance, insisting that he should not "be identified as the defendant" and that the court should dismiss the charges against him.  Two magistrate judges and the district judge offered Mr. Perkins multiple opportunities to discuss his efforts to have the court remove his court-appointed counsel, but Mr. Perkins side-stepped the judges' questions.  When the

district judge asked Mr. Perkins directly, "are you trying to indicate that you want to waive your right to counsel," Mr. Perkins asked the judge for her name and demanded that she provide "proof of claim" of his "obligation to have representation."

Unable to shed his court-appointed lawyer, Mr. Perkins apparently decided that the next best way to avoid a trial was to refuse to leave his cell on the day that his trial was scheduled to begin. His tactic was simple: provoke a violation of Rule 43's requirement that a criminal defendant be present at "every trial stage, including jury impanelment . . . ." Fed. R. Crim. P. 43(a)(2). Displaying disregard for the members of the venire who sat waiting for jury selection to begin, Mr. Perkins refused to get dressed for trial and refused to leave the holding cell. He told one of the deputy marshals that the marshals would have to beat him, and he would "be kicking and screaming to go into that courtroom." When the district judge went to see Mr. Perkins, he became violent and spoke over the judge when she tried to persuade him to come to the courtroom.

A criminal defendant who engages in this kind of obstructive behavior does so at his own peril. The system that Mr. Perkins attempted to disrupt is designed to protect not only his rights but the rights of all defendants to the fair administration of the proceedings against them. A district judge cannot permit a single defendant to jeopardize the whole system. We find no readily apparent reversible error in the

district judge's decision to deny Mr. Perkins's request to remove his court-appointed counsel or in her decision to conduct the trial without Mr. Perkins in the courtroom, but we do not pause long to consider these issues because we find that Mr. Perkins invited any error that the district court may have committed. Therefore, we reject Mr. Perkins's Sixth Amendment challenge to his conviction and his argument that the district court violated Rule 43.

B.    *The District Court did not Abuse Its Discretion when it Found that Mr. Perkins was Competent to Stand Trial.*

Mr. Perkins argues that the district court should have ordered a competency hearing before his trial began.  We disagree.

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent."  *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005) (citing U.S. Const. Amend. V and *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).  "Whether the defendant is competent is an ongoing inquiry; the defendant must be competent at all stages of trial."  *Id.*  In the absence of a motion for a competency hearing from the government or from defense counsel, a district court "shall order" a hearing to determine the mental competency of a defendant "on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist

properly in his defense." 18 U.S.C. § 4241(a). A district court may rule on a

defendant's competence "'without benefit of a full dress hearing so long as the

court has no 'bona fide doubt' as to the competence of the defendant.'" *United*

*States v. Nickels*, 324 F.3d 1250, 1252 (11th Cir. 2003) (quoting *United States v.*

*Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986)). This Court reviews for abuse of

discretion a district court's decision not to order a competency hearing prior to

trial. *Id.* at 1251.

After reviewing the record, we conclude that the district court did not abuse

its discretion in finding that Mr. Perkins was competent to stand trial. Before and

during trial, the district judge noted Mr. Perkins's conduct and concluded, *sua*

*sponte*, that Mr. Perkins's disruptive behavior was the product of a competent,

calculating mind. At the pretrial hearing, the district judge found that Mr.

Perkins's disruptive conduct was studied, contrived, and manipulative, and she

stated, "I don't see any reason to send this defendant off for a competency

hearing." On the second day of trial, the judge made a similar finding. The record

confirms that Mr. Perkins planned and executed a strategy to stymie the district

court proceedings by saying things that sounded crazy, much like he designed and

executed the extensive fraud scheme that brought him before the district court.

The record reflects that Mr. Perkins was not unable to assist his attorney with his

defense; Mr. Perkins simply chose not to participate in his defense.

Recordings of Mr. Perkins's telephone calls with family members demonstrate that Mr. Perkins carefully studied the Federal Rules of Criminal Procedure and then developed tactics to avoid trial.  The following conversation between Mr. Perkins and his mother illustrates the point:

> Mother:  . . . Okay.  Here it go.  It say, presence of the defendant.  The Rule 43.  Presence required.  The defendant shall be present at the arraignment at the time of the plea, and every stage of the trial including the empanelment of the jury and the return of the verdict, and at the imposition of sentence except as otherwise provided by this rule.
>
> . . .
>
> Perkins: Yeah.  You got to be present first.
>
> Mother:  Yeah.  You have to be present first or have pleaded guilty or *nolo*
>
> Perkins:  *Contendre*.
>
> Mother:  Or *nolo* contender.
>
> Perkins:  Yeah, that's Rule 43 you're under.
>
> Mother:  Yeah.  Under Rule 43.  They still saying that the only shortcut was if you were present in the beginning.
>
> . . .
>
> Perkins:  I get uh . . . you didn't get a chance to pull that actual case, though, huh?
>
> Mother:  Oh, yeah.  I had pulled the case up, too.  Let me see.
>
> . . .

18

Mother:  The first sentence of this rule setting for necessity of the defendant presence at arraignment and trial is a restatement of existing law.  *Lewis v. United States* and *Diaz v. United States*.

Perkins:  Yeah.  *Diaz*.

Admittedly, a defendant who engages in tactics like these may, as Mr. Perkins argues, simultaneously suffer from mental illness.  But on the present record, we conclude that the district court did not abuse its discretion in concluding that Mr. Perkins was competent to stand trial.

Following Mr. Perkins's trial and his sentencing hearing but before the district court entered the judgment and commitment order for this case, Mr. Perkins's appointed counsel filed a motion for a competency hearing.  Before the district court ruled on the motion, the court received the transcripts of Mr. Perkins's telephone calls from jail.  The transcripts demonstrate that Mr. Perkins chose to "act[] like a ****ing lunatic" to derail the proceedings against him.  The district court held that in those taped conversations, Mr. Perkins seemed lucid.  The record supports this conclusion.  Consequently, the district court did not abuse its discretion in denying Mr. Perkins's motion for a competency hearing.

### C.    *Mr. Perkins's 360-Month Sentence is Proper.*

Mr. Perkins argues that the district court erred in applying a two-step enhancement to his sentence for obstruction of justice, and he contends that his total sentence is substantively unreasonable.  Neither argument persuades us.

19

i.

When considering a district court's imposition of an enhancement for

obstruction of justice, we review the district court's factual findings for clear error

and the application of the factual findings to the sentencing guidelines *de novo*.

*United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011).  Unless it is harmless, an

error in the district court's calculation of the applicable guideline range warrants

reversal.  *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009).  A

calculation error is harmless when a district judge clearly states that she would

impose the same sentence regardless of the enhancement, and the sentence

imposed is reasonable.  *United States v. Keene*, 470 F.3d 1347, 1349-50 (11th Cir.

2006).

When she sentenced Mr. Perkins, the district judge imposed a two-level

enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  Section

3C1.1 authorizes a district court to enhance a defendant's offense level by two

levels when:

> (1) the defendant willfully obstructed or impeded, or attempted to
> obstruct or impede, the administration of justice with respect to the
> investigation, prosecution, or sentencing of the instant offense of
> conviction, and (2) the obstructive conduct related to (A) the
> defendant's offense of conviction and any relevant conduct; or (B) a
> closely related offense.

U.S.S.G. § 3C1.1.  A court may use the enhancement when a defendant "willfully

fail[s] to appear, as ordered, for a judicial proceeding."  *Id.*, cmt. n.4(E).

"Willfully" means the defendant consciously acted with the purpose of obstructing justice. *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006).

Mr. Perkins's actions throughout the district court proceedings fall within the scope of § 3C1.1. As we have discussed, Mr. Perkins willfully set out to clog the gears of the judicial process. He willfully failed to appear for his trial despite the district judge's repeated efforts to persuade him to attend. Although he did not manufacture evidence, threaten witnesses, or give false testimony, he ignored court procedures by filing multiple *pro* se motions while he had counsel, and he delayed and disrupted court proceedings, even to the point of threatening violence. On the record before the Court, there is no doubt that Mr. Perkins engaged in this conduct in an attempt to obstruct or impede the proceedings in this case.

The district court did not clearly err in applying a § 3C1.1 enhancement to Mr. Perkins's sentence for his willful obstruction of the pretrial and trial proceedings in this matter. *See Massey*, 443 F.3d at 819. But even if the district court had erred in applying the enhancement, the error would be harmless because the district judge unequivocally stated that she would have imposed the same 360-month sentence even without the enhancement, and, as discussed below, that sentence is reasonable. *See Keene*, 470 F.3d at 1349-50.

ii.

A district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553(a).  Those purposes include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offender, deter criminal conduct, and protect the public from future criminal conduct.  18 U.S.C. § 3553(a)(2).

We review the substantive reasonableness of a sentence for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  Although we do not automatically presume that a sentence within the guidelines range is reasonable, we ordinarily expect such a sentence to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  We will vacate a sentence only "if . . . we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks and citations omitted).  The Court commits to the sound discretion of the district court the weight to be accorded to each § 3553(a) factor.  *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007).

Mr. Perkins's 360-month sentence is reasonable.  The district court properly calculated the guidelines range, counting the victims' loss amounts in a way that was favorable to Mr. Perkins.  Mr. Perkins's sentence falls within the applicable guidelines range.  The record reflects that the district court considered Mr. Perkins's personal characteristics and history and concluded that, given Mr. Perkins's vast, well-planned scheme and his unrepentant behavior, a 360-month sentence was reasonable.  *See Amedeo*, 487 F.3d at 832.  This does not represent a clear error in judgment in light of the totality of the circumstances.  Mr. Perkins's scheme involving hundreds of fraudulent credit cards and more than 100,000 account profiles claimed hundreds of victims.  The district court found that in light of the conduct at issue and Mr. Perkins's criminal history, Mr. Perkins presents a danger to society.  The record supports this conclusion.  Under the totality of the circumstances, we find that the district court did not abuse its discretion in imposing a 360-month sentence.

### D.  The District Judge was not Required to Recuse.

Mr. Perkins argues that the district court was obligated to recuse *sua sponte* and that the district court erred when it denied Mr. Perkins's *pro se* motion to recuse before his sentencing hearing.  We review these arguments under the abuse of discretion standard.  *United States v. Berger*, 375 F. 3d 1223, 1227 (11th Cir. 2004).

A district judge must recuse *sua sponte* "in any proceeding in which his

impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

> Under § 455, the standard is whether an objective, fully informed lay
> observer would entertain significant doubt about the judge's
> impartiality. . . . Furthermore, the general rule is that bias sufficient to
> disqualify a judge must stem from extrajudicial sources.

*Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (internal

quotation marks and citations omitted).  Here, no objective, fully informed lay

observer would entertain significant doubt about the district judge's impartiality.

Mr. Perkins set out to goad the district court.  His conduct displayed complete

disregard for the district court.  Mr. Perkins was proud of the fact that he

interrupted the district judge and spoke over her so that he could disrupt the pretrial

and trial proceedings in this case.  The district judge refused to cede control of the

proceedings to Mr. Perkins.  To the extent that some of the district judge's

comments evince frustration with Mr. Perkins, that frustration stems solely from

judicial sources – namely, Mr. Perkins's dilatory tactics and refusal to participate

in the judicial proceedings.  The district court was not required to recuse under §

455.

Similarly, the district court did not abuse its discretion by denying Mr.

Perkins's *pro se* motion for recusal under 28 U.S.C. § 144.  Section 144 provides

that a district judge "shall proceed no further" when "a party . . . makes and files a

timely and sufficient affidavit that the judge . . . has a personal bias or prejudice"

24

for or against any party.  The affidavit must be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard" unless good cause excuses a delay, and it must be "accompanied by a certificate of counsel of record stating that it is made in good faith."  28 U.S.C. § 144.  Before a judge recuses herself, a § 144 affidavit must be "strictly scrutinized for form, timeliness, and sufficiency."  *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972).[1]  Mr. Perkins's affidavit did not meet the procedural requirements of § 144 because it was not accompanied by a good-faith certificate from his appointed counsel of record.

### E.  The District Court did not Commit Clear Error in Admitting an Out-of-Court Photo Array Identification.

Mr. Perkins argues that the district court erred when it denied as moot motions to suppress evidence that the Tampa City Police obtained through searches of a bag that Mr. Perkins left in a restaurant, a computer that agents found inside of the bag, and his residence.  Mr. Perkins also challenges the admission of an out-of-court identification, arguing that the photo array from which the identification was made was unduly suggestive.  A magistrate judge recommended that the district court deny the photo identification motion and deny as moot the other motions to suppress.

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent in this Court decisions that the former Fifth Circuit Court of Appeals issued prior to October 1, 1981).

Mr. Perkins objected only to the magistrate judge's ruling on the identification evidence; he did not object to the recommendation that the district court deny the balance of the motions to suppress as moot. Because Mr. Perkins did not object to the portion of the report and recommendation regarding the search of the bag, the computer, and the residence, he waived his right to challenge the district court's rulings on those motions on appeal. Fed. R. Crim. P. 59; *United States v. Holt*, 777 F.3d 1234, 1257-58 (11th Cir. 2015). If Mr. Perkins had not waived the issue, based on the parties' briefs and our review of the record, we would conclude that the district court did not err in denying the motions to suppress as moot.[2]

Because Mr. Perkins objected to the portion of the magistrate judge's report and recommendation concerning the identification evidence, we must consider the suppression ruling regarding that evidence. "'A district court's ruling on a motion to suppress presents a mixed question of law and fact.' We review the district court's findings of fact for clear error and its application of law to the facts *de novo*, viewing all facts in the light most favorable to the party that prevailed in the

---

[2] We note that Mr. Perkins's argument concerning the laptop computer rests on a misunderstanding of the record. During the suppression hearing before the magistrate judge, the government stated that it would not seek to enter into evidence the laptop obtained from a confidential informant or evidence discovered on that particular laptop. The government made no such assertion about the laptop that was discovered in a bag that Mr. Perkins left at a restaurant. The district court properly denied the motion to suppress the laptop from the confidential informant as moot, and the government did not introduce that laptop at trial.

district court" – here, the United States.  *United States v. Heard*, 367 F.3d 1275,

1278 (11th Cir. 2004) (quoting *United States v. Chanthasouxat*, 342 F.3d 1271,

1275 (11th Cir. 2003)).  We may affirm the denial of a motion to suppress on any

ground supported by the record.  *United States v. Caraballo*, 595 F.3d 1214, 1222

(11th Cir. 2010).

Mr. Perkins argues that the district court should have excluded evidence of

an out-of-court photo array identification made by the manager of the restaurant

where Perkins left a bag containing evidence of his crimes.[3]  The Court uses a two-

step process to determine whether an out-of-court identification was proper.  "First,

we ask whether the original identification procedure was unduly suggestive.  If we

conclude that it was, we then consider whether, under the totality of the

circumstances, 'the identification was nonetheless reliable.'"  *United States v.

Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006) (quoting *United States v. Diaz*, 248

F.3d 1065, 1102 (11th Cir. 2001)).  When determining whether a photo array is

unduly suggestive, we consider the size of the array, the manner of its presentation,

and the details of the photographs in the array.

---

[3] Mr. Perkins also argues that because other unduly suggestive out-of-court identifications were
used as the basis for obtaining search warrants for his bag, his computer, and his residence, the
district court should have held a new hearing to determine whether there was probable cause for
the warrants.  Mr. Perkins first raised this argument in the brief that his appointed counsel filed
after the hearing on Mr. Perkins's motions to suppress.  The magistrate judge rejected the
argument.  Mr. Perkins did not pursue the issue in his objection to the magistrate judge's report
and recommendation.  Consequently, he has waived appellate review of the argument.  Fed. R.
Crim. P. 59.

The photo array that a law enforcement officer presented to the restaurant manager contained six photos.  The photos were of African-American men who appeared to be roughly the same age and who had similar facial features and similar hair length.  The restaurant manager testified that the officer simply asked if he recognized anyone on the page; the officer did not indicate that the manager should choose a particular photo.  Mr. Perkins argues that his photograph was unduly suggestive because he is the only man in the lineup with gold teeth, a distinguishing feature of his.  The magistrate judge found, and the district court agreed, that this fact alone did not make the lineup unduly suggestive.  The district court did not clearly err in reaching this conclusion.

Moreover, any error arising from the purportedly improper admission of the out-of-court identification was harmless.  The record contains overwhelming evidence of Mr. Perkins's guilt.  The bag that Mr. Perkins left in the restaurant contained credit cards in various names and bank documents which bank insiders gave to Mr. Perkins.  When Mr. Perkins returned to the restaurant to ask if he had left the bag behind, he identified himself as "Daniel Matthews."  When he was arrested, Mr. Perkins was carrying a Georgia driver's license in the name of "Daniel J. Matthews" that bore his picture.  Several trial witnesses identified Mr. Perkins, including the agent who arrested him, an undercover agent, and several

co-conspirators.  In light of this evidence of Mr. Perkins's guilt, any purported error concerning the photo array was harmless.  *Brown*, 441 F.3d at 1350.[4]

### III.      CONCLUSION

We find no reversible error in the manner in which the district court addressed Mr. Perkins's obstructive tactics, evaluated Mr. Perkins's competency, imposed Mr. Perkins's sentence, resolved the recusal issues in this case, or decided Mr. Perkins's motions to suppress.  Accordingly, we **AFFIRM**.

---

[4] Based on this evidence, which we view in the light most favorable to the United States, we reject Mr. Perkins's argument that the United States failed to present sufficient evidence to show that the person described in the indictment was the person on trial.  *United States v. Boffil-Rivera*, 607 F.3d 736, 740 (11th Cir. 2010).  Similarly, we reject Mr. Perkins's argument concerning the sufficiency of the evidence relating to his conviction for aggravated identity theft. The evidence demonstrated that Mr. Perkins stole a woman's identity and used it to rent the apartment where he conducted his fraudulent scheme.  Mr. Perkins's co-defendant testified that the apartment belonged to Mr. Perkins.  The woman in whose name the apartment was rented testified that her name, date of birth, and social security number were accurately written on the apartment application.  Mr. Perkins had to know that she was a real person because the credit and background checks that the apartment complex ran using the woman's date of birth and social security number were successful.  *United States. v. Holmes*, 595 F.3d 1255 (11th Cir. 2010). Given the sufficiency of the evidence of aggravated identity theft, we affirm the two-level sentence enhancement for aggravated identity theft.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Douglas J. Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 01, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 13-13444-AA
Case Style: USA v. Jean-Daniel Perkins
District Court Docket No: 1:10-cr-00097-JEC-LTW-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas, AA at (404) 335-6169.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion